**Paul and Melissa ENSOR,**
**Respondents,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. WD 75846.**

Missouri Court of Appeals,
Western District.

Sept. 17, 2013.

Paul and Melissa Ensor, Respondents Pro Se, for appellant.

James R. Layton, Jefferson City, MO, for respondent.

Before Division Three: LISA WHITE HARDWICK, Presiding Judge, MARK D. PFEIFFER and CYNTHIA L. MARTIN, Judges.

LISA WHITE HARDWICK, Judge.

The Director of Revenue ("Director") appeals from the Administrative Hearing Commission's ("AHC") decision ordering the Director to issue a reconstructed motor vehicle title to Paul and Melissa Ensor for their 2006 Chevrolet Suburban. The Director contends the AHC's decision violates Missouri's obligation to give full faith and credit to the State of Texas's determination that the Suburban is nonrepairable and barred from repair and use on public roads. For reasons explained herein, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

In January 2008, the Texas Department of Transportation issued a nonrepairable vehicle title for a 2006 Chevrolet Suburban to the vehicle's then-owner, Commerce & Industry Insurance Company. Pursuant to the Texas Certificate of Title Act, a "nonrepairable motor vehicle" is one that is "damaged, wrecked, or burned to the extent that the only residual value of the vehicle is as a source of parts or scrap metal." TEX. TRANSP. CODE ANN. § 501.091(9)(A) (West Supp.2012). Under Section 501.09111(a)(2) of the Texas Transportation Code, a person who owns a nonrepairable motor vehicle may not "operate or permit the operation of the motor vehicle on a public highway"; "repair, rebuild, or reconstruct the motor vehicle"; or "reg-

ister the motor vehicle."[1] Accordingly, the Texas title certificate for the 2006 Suburban included the following statement at the top of the document:

**THIS VEHICLE MAY *NOT* BE REPAIRED, REBUILT, OR RECONSTRUCTED, ISSUED A REGULAR CERTIFICATE OF TITLE, REGISTERED OR OPERATED IN TEXAS. THIS VEHICLE MAY BE USED *ONLY* AS A SOURCE FOR USED PARTS OR SCRAP METAL.**

Commerce & Industry Insurance Company subsequently endorsed the Texas nonrepairable vehicle title to Polecat's Auto Sales ("Polecat's"), a used car dealer in Malden, Missouri. Polecat's replaced the frame and front-end assembly on the Suburban and sold the vehicle to the Ensors for $17,500 on July 8, 2009. Polecat's assigned the Texas nonrepairable vehicle title to the Ensors and gave them a bill of sale. The bill of sale stated that the Suburban's present condition was "wrecked in front & rebuilt" and that the vehicle was "sold with [a] Tx. non-repairable title."

On August 18, 2009, the Ensors filed a petition for declaratory judgment against the Director in the circuit court seeking a Missouri certificate of title for the vehicle. The court entered a declaratory judgment stating that the vehicle was "now operable, safe and entitled to the issuance of a new certificate of title" in the Ensors' name. The Ensors next had an officer with the Missouri State Highway Patrol prepare a vehicle examination certificate for the Suburban. The officer noted the Texas nonrepairable vehicle title and that the Suburban's frame and front-end assembly bore different title numbers from the rest of the

vehicle. The officer also checked a box on the examination certificate marked, "verified vehicle being rebuilt."

The Ensors then applied for a prior salvage title certificate. Missouri statutes do not define a "prior salvage" vehicle, but the Director's titling manual indicates that vehicles that are branded "prior salvage" include those for which a Missouri or out-of-state salvage title certificate has been issued in the past. *Motor Vehicle and Marinecraft Titling Manual*, STATE OF MO., DEP'T OF REVENUE, MOTOR VEHICLE BUREAU, 11–8 to 11–9 (last visited Sept. 4, 2013), http://dor.mo.gov/forms/Missouri_Titling_ Manual.pdf. Additionally, the titling manual indicates that a reconstructed motor vehicle, which is defined as a vehicle that has received damage and is repaired or reconstructed through the use of two or more major component parts, is branded either a "reconstructed motor vehicle" or a "prior salvage" vehicle. *Id.* at 11–7.

After receiving the Ensors' application, an employee of the Department of Revenue notified the Ensors that their application was missing some items required for the issuance of a title certificate. Three months later, the Director issued a junking certificate for the Suburban. A "junk vehicle" is a vehicle that is "incapable of operation or use upon the highways and has no resale value except as a source of parts or scrap, and shall not be titled or registered." Section 301.010(22), RSMo Cum.Supp.2012.[2]

The Ensors appealed the Director's decision to issue a junking certificate to the AHC. In March 2012, the AHC held a hearing on the Ensors' appeal. During

---

1. Section 501.100 of the Texas Transportation Code provides an exception to this rule for vehicles for which a nonrepairable title was issued prior to September 1, 2003. This exception does not apply to the 2006 Suburban.

2. All statutory references are to the Revised Statutes of Missouri 2000, as updated by the Cumulative Supplement 2012, unless otherwise indicated.

the hearing, the Director argued that, to give full faith and credit to the nonrepairable vehicle title that Texas issued for the Suburban, Missouri was required to issue its equivalent, which is a junking certificate. The Ensors argued that the Director should not have issued a junking certificate because the Highway Patrol inspection confirmed that the replacement parts on the Suburban were not stolen and, with those replacement parts, the Suburban was drivable and safe.

The AHC entered an order finding that the Full Faith and Credit Clause of the United States Constitution did not prevent Missouri from applying its own statutes to determine the proper branding for a Missouri title. The AHC explained that, while the Suburban may have qualified as a junk vehicle under Missouri law when it was brought into Missouri, it was not a junk vehicle when it was sold to the Ensors. Because Polecat's had replaced the frame and front-end assembly, two major component parts under Section 301.010(30), the AHC determined that the Suburban appeared to fit Section 301.010(45)'s definition of a reconstructed motor vehicle. The AHC declined to order the Director to issue a new title with the reconstructed motor vehicle designation on it at that time, however, because the Ensors had not provided all of the documents required to title the vehicle.

The Director moved for a rehearing, which the AHC denied. The Ensors provided the documents necessary to title the Suburban, and the AHC entered its final decision ordering the Director to issue a reconstructed motor vehicle title certificate to them. The Director appeals.

### ANALYSIS

■ In his sole point on appeal, the Director contends the AHC erred in ordering him to issue a reconstructed motor

vehicle title certificate for the Suburban because the order violated Missouri's obligation to give full faith and credit to Texas's decision that the Suburban was a nonrepairable vehicle.

The Full Faith and Credit Clause provides, in pertinent part, "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. CONST. art. IV, § 1. The Director asserts that the Texas title certificate is a "record," and issuing it was a "public act." The Director argues that, to give the Texas title certificate full faith and credit, Missouri must find that the Suburban is a junk vehicle that cannot be repaired, reconstructed, issued a regular certificate of title, registered, or operated in Missouri.

On its face, however, the Texas nonrepairable title indicates that its restrictions apply only while the vehicle is in Texas. The title states that the Suburban "may not be repaired, rebuilt, or reconstructed, issued a regular certificate of title, registered or operated *in Texas.*" (Emphasis added.) Based upon this language alone, the AHC's determination as to how the vehicle should be titled and treated *in Missouri* does not afford the Texas title less than full faith and credit as the record of another state.

■ Moreover, while we recognize that the Texas statute on which the nonrepairable title's language is based does not limit the application of the nonrepairable vehicle restrictions to Texas, see TEX. TRANSP. CODE ANN. § 501.09111(a)(2), how Missouri titles vehicles in this state and the effect of those title designations are matters to be decided under Missouri's titling statutes. In Full Faith and Credit jurisprudence, the United States Supreme Court has recognized a difference between "the credit owed to laws (legislative measures and common law) and to judgments." *Baker v.*

*Gen. Motors Corp.*, 522 U.S. 222, 232, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998). Although the full faith and credit obligation "is exacting" with regard to final judgments rendered by courts with personal and subject matter jurisdiction, it is less so with regard to laws. *Id.* at 232–33, 118 S.Ct. 657. The Full Faith and Credit Clause does not require " 'a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.' " *Id.* (quoting *Pac. Emp'rs Ins. Co. v. Indus. Accident Comm'n*, 306 U.S. 493, 501, 59 S.Ct. 629, 83 L.Ed. 940 (1939)). Accord, *United States v. Ramirez*, 86 Fed. Appx. 384, 385–86 (10th Cir.2004) (unpublished). Missouri is competent to pass legislation concerning the titling of motor vehicles in this state and, therefore, the Full Faith and Credit Clause does not require it to apply Texas law in lieu of its own.

While Texas's statutes provide that, once a vehicle is classified as nonrepairable, its owner can never repair or reconstruct it, Missouri's statutes do not contain this same prohibition. Rather, Missouri's statutes indicate that, whether a vehicle that is classified as junk can be repaired or reconstructed is left to the discretion of the vehicle's purchaser. Section 301.227.2 provides that, when a vehicle is classified as junk under Section 301.010(22), "the purchaser *may* forward to the director of revenue the salvage certificate of title or certificate of ownership and the director shall issue a negotiable junking certificate to the purchaser of the vehicle." (Emphasis added.) Section 301.227.3 further provides, in pertinent part:

> Upon receipt of a properly completed application for a junking certificate, the

director of revenue shall issue to the applicant a junking certificate which shall authorize the holder to possess, transport, or, by assignment, transfer ownership in such parts, scrap or junk, and a certificate of title shall not again be issued for such vehicle; except that, the initial purchaser shall, within ninety days, be allowed to rescind his application for a junking certificate by surrendering the junking certificate and apply for a salvage certificate of title in his name.

The plain language of these provisions indicates that the purchaser of a vehicle that meets the statutory definition of junk may, but is not required to, apply for a junking certificate. § 301.227.2. If the purchaser applies for a junking certificate and the Director issues a junking certificate, then the prohibition against ever obtaining a new certificate of title for the vehicle becomes effective, which means that the vehicle could not be repaired or reconstructed. § 301.227.3. If, however, within ninety days after the Director issues a junking certificate, the purchaser changes his mind about wanting the junking certificate, Section 301.227.3 gives the purchaser the power to rescind his application for a junking certificate and apply for a salvage title instead. Thus, while a nonrepairable classification in Texas forecloses the possibility of future reconstruction, a junk classification in Missouri forecloses future reconstruction only if the purchaser decides to apply for a junking certificate, is issued one, and does not seek to rescind and replace it with a salvage title.[3]

Neither the Ensors nor Polecat's ever applied for a junking certificate on the Suburban. The Director argues, however,

---

**3.** In support of his claim that the Full Faith and Credit Clause requires Missouri to title the Suburban as Texas did, the Director relies upon *Gibson v. Bolner*, 165 Ohio St. 357, 135 N.E.2d 353, 356 (1956). The issue in *Gibson*

was whether the entity that was listed as the first mortgagee on a Florida certificate of title had priority over a subsequent mortgagee, where no Ohio certificate of title on the motor vehicle had been issued. *Id.* at 354. In hold-

that Polecat's was required to apply for a junking certificate when it first brought the Suburban into Missouri from Texas. The Director notes that Section 301.190.11 requires motor vehicles brought into Missouri in a wrecked or damaged condition to be inspected by the Highway Patrol. This inspection includes a verification of the vehicle identification numbers and a determination of the vehicle's classification as junk or salvage. § 301.190.9.

The Director asserts that an inspection of the Suburban would have revealed that the vehicle was in a junk condition. Section 301.190.11 provides that, if the inspection shows that the vehicle is in a junk condition, the Director "shall so indicate on any Missouri certificate of ownership issued for the vehicle." Thus, the Director argues that Missouri's statutory procedure was not followed because Polecat's should have applied for a junking certificate. The Director further argues that the issuance of the junking certificate would have triggered Section 301.227.3's provision for Polecat's to seek to replace the junking certificate with a salvage certificate within ninety days. Because Polecat's did not take these steps before reconstructing the Suburban and selling it to the Ensors, the Director contends the Ensors cannot obtain a certificate of title on the vehicle that will allow them to register and drive it. We disagree.

Whether Polecat's complied with Missouri's statutes when it brought the Suburban into the state from Texas and reconstructed it is a matter between the Director and Polecat's. When the Ensors applied for a Missouri certificate of title for the Suburban, the vehicle was not in a junk condition. The Suburban is capable of operation or use upon the highways and has a resale value that is higher than as a source of parts or scrap. See § 301.010(22). The Director agrees that the Suburban now fits Section 301.010(45)'s definition of a "reconstructed motor vehicle," as it is "a vehicle that has been altered from its original construction by the addition or substitution of two or more new or used major component parts." The Director also concedes that, if the Suburban could be issued a title certificate in a way that contradicts the Texas title certificate, "reconstructed motor vehicle" would be the proper brand for the title certificate. Because the Full Faith and Credit Clause does not require Missouri to apply Texas law in determining how to title vehicles in Missouri, and Missouri law allows for vehicles that are classified as junk but are without a junking certificate to be reconstructed, we find that the AHC did not err in ordering the Director to issue the Ensors a certificate of title branding the Suburban a reconstructed motor vehicle.

CONCLUSION

We affirm the AHC's decision.

ALL CONCUR.

ing that the first mortgagee did have priority, the Ohio Supreme Court found that the Florida certificate of title was a public act and record of Florida and, as such, was entitled to full faith and credit. *Id.* at 356. The court explained that, if an Ohio certificate of title had been issued, it, like the Florida certificate of title, would have listed the first mortgagee on the title. *Id.* Hence, the notation of the first mortgagee's lien on the Florida certifi-cate of title was consistent with Ohio law and Ohio's public policy protecting owners and mortgagees of motor vehicles. *Id.* The distinction between *Gibson* and this case is that, in *Gibson*, the determination as to lien priority on motor vehicle titles was the same under Florida and Ohio law, whereas here, the effect of a vehicle's classification as nonrepairable or junk is not the same under Texas and Missouri law.